**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-4053-CR-C-SRB |
| | ) | |
| CHARLES ALLEN ROARK, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant Charles Allen Roark's motion to suppress. (Doc. 13). The Government filed suggestions in opposition (doc. 15), and a hearing was held on the motion (doc. 19).

Defendant Roark's motion asserts that he was seized without probable cause or reasonable suspicion. He claims that, contrary to assertions by officers, he did not violate any laws and, as a result, the seizure of his person occurred in violation of the Fourth Amendment. As a result, the Defendant asserts that any evidence seized as a result of his unlawful seizure, including the gun, should be suppressed.

### Findings of Fact

At approximately 12:12 a.m. on July 18, 2015, Jefferson City Police Officers Jarrod Phelps and Joshua Hagemeyer were on duty, working with officers in the plain-clothes unit, conducting narcotics investigation in an alley behind a bar in Jefferson City, Missouri, called Spectators. Law enforcement had received multiple complaints that drug activity had recently occurred in this area. Complaints had come from multiple citizens and a number of businesses, including the Spectators bar. The Community Action Team in the three weeks prior to this incident had made several arrests in the alley and parking lot behind the bar. Plain-clothes Sgt. Joseph Matherne, who was part of a Community Action Team, was parked in an unmarked police vehicle in the parking lot in the alley behind the bar. While it was night, the parking lot was well lit. Sgt. Matherne described the lighting behind the bar as "excellent." Sgt. Matherne observed a black Jeep SUV backed into a parking spot with the engine running. The Jeep was occupied by two individuals; the driver was a man (this man was later identified as defendant

Roark upon his arrest) and the passenger was a woman. Sgt. Matherne observed 2-3 people come up to the driver-side window of the Jeep and talk with driver of the Jeep, Roark. About 40 minutes later, Sgt. Matherne observed a vehicle pull into the parking lot and three men exited the vehicle and approached the Jeep. Roark exited the Jeep and greeted the three men. Sgt. Matherne described Roark as a tall slender white male wearing a hat. After a few minutes of talking, Roark returned to the Jeep and then met the three men at the back passenger side of the Jeep. Sgt. Matherne observed a hand exchange between Roark and one of the three men. Sgt. Matherne observed one of the three men pull out a bundle of cash and hand the cash to Roark. Sgt. Matherne then observed Roark reach into his pocket and hand something to the male who had handed him the cash. Sgt. Matherne, based on his more than twenty years of law enforcement experience, believed the actions he just observed were typical of a drug sale transaction.

Immediately following the hand exchange, both vehicles, that is Roark's black Jeep SUV and the vehicle the three men had arrived in, left the parking lot and alley. Sgt. Matherne observed Roark's black Jeep to have Indiana license plates. Sgt. Matherne contacted Officers Phelps and Hagemeyer, who were in the immediate area in a marked police vehicle, and advised them what he had just witnessed, specifically that he observed Roark engaging in a drug transaction. Sgt. Matherne then directed the officers as to the Jeep's direction of travel and described the Jeep as black in color with Indiana license plates. He further informed the Officers that the occupants were a male driver and a female passenger. Sgt. Matherne also advised Officers Phelps and Hagemeyer that he had probable cause for them to stop the Jeep based on the drug transaction he just witnessed.

Officers Phelps and Hagemeyer quickly found the vehicle described by Sgt. Matherne, and pulled behind the vehicle. Officer Phelps testified that it was fairly easy to locate the vehicle because it was the middle of the night, and there were hardly any vehicles on the streets. The Officers ran the license plate of the black SUV Jeep on the computer in their police patrol car. The return the Officers received from the computer provided that the car's license plate was expired as of February 15. Driving with expired plates is a violation of Missouri law. Officers Phelps and Hagemeyer activated the police patrol car's emergency overhead lights and attempted to stop Roark's vehicle. The vehicle did not stop. The vehicle continued traveling West for two blocks and then turned north on Washington Street and continued until it pulled into a small

parking spot on the west side of the 300 block of Washington Street and hit a concrete wall. Roark quickly exited the driver side of the Jeep and started running west bound through a breezeway area. Officer Hagemeyer exited his marked police patrol car and began to pursue Roark who was running west. Officer Phelps stayed with the Jeep to secure the female passenger who did not flee. Officer Phelps noticed just outside the driver side door of the Jeep, at the location where Roark had just exited, there was a small bag of what appeared to be drug contraband. Specifically, the small bag contained what appeared to be marijuana and pills. Officer Phelps secured the female passenger in the black Jeep and secured the contraband. Officer Phelps also did a quick search of the vehicle in order to secure the scene; no items of contraband were located in the vehicle.

While pursuing Roark on foot westward from the Jeep, in an area near an apartment building, Officer Hagemeyer observed Roark reach into his waistband and draw from his waistband what Hagemeyer believed to be a firearm, although Hagemeyer couldn't see for sure. Officer Hagemeyer believed the item withdrawn from Roark's waistband to be a firearm based on his years of law enforcement experience which have given him knowledge of the manner in which a person reaches back into his waistband for a gun. Observing this action by Roark, Officer Hagemeyer backed off from his pursuit of Roark, deciding to draw his own firearm and proceed carefully in the direction Roark was running. Officer Hagemeyer lost sight of Roark for a short period of time as Roark disappeared around the side of a building. Shortly thereafter, Officer Hagemeyer was able to observe Roark as he jumped a fence. In pursuit of Roark, Officer Hagemeyer also jumped the fence – this resulted in Officer Hagemeyer breaking the tibia in his left leg. Officer Hagemeyer quickly radioed other officers on the scene who continued with the chase of Roark.

Officer Spencer Market joined in the pursuit of the Defendant, and commanded him to stop. The Defendant stopped, but placed his hand into his right front pants pocket. Officer Market drew his service revolver and pointed it at the Defendant, who again attempted to flee. Officer Steve Scheuler, who had also responded to assist, drew his service revolver and instructed the Defendant to stop and get on the ground. When the Defendant refused to comply, Officer Scheuler holstered his gun, grabbed the Defendant, and took him to the ground. The Defendant continued to resist but, with Officer Market's assistance, the officers were able to gain control of him.

Officer Nichols who arrived on the scene to assist helped locate the gun that Officer Hagemeyer saw Roark withdraw from his waistband. With the assistance of Officer Hagemeyer as to where he observed Roark draw the gun, Officer Nichols was able to locate the gun that Roark pulled from his waist band and later tossed to the ground while being pursued by law enforcement. The gun located by Officer Nichols was found on the route between where Officer Hagemeyer saw Roark drawing a gun from his waistband and the location where Roark was ultimately apprehended by law enforcement. The gun was a Smith & Wessson, Model SW40VE, .40 caliber pistol, serial number RAW7908, with 12 rounds in the magazine and one round in the chamber. When Roark was arrested and subsequently searched, $20,000 was recovered from Roark's person. An additional $8,000 was found hidden in the soles of his shoes.

**Discussion**

Upon review, the Court finds no Fourth Amendment violation occurred. A vehicle stop is lawful based upon reasonable suspicion of criminal activity. United States v. Coleman, 603 F.3d 496, 499 (8th Cir. 2010). See also United States v. Mora-Higuera, 269 F.3d 905, 909 (8th Cir. 2001) ("an investigative stop of a vehicle does not violate the Fourth Amendment if the police have reasonable suspicion that the vehicle or its occupants are involved in criminal activity."); Terry v. Ohio, 392 U.S. 1, 25-31 (1968) (A *Terry* investigatory stop allows an officer to briefly detain a citizen if the officer has a reasonable suspicion that criminal activity may be afoot). A stop based upon reasonable suspicion must be supported by specific and articulable facts, also known as "particularized objective bases." United States v. Arvizu, 534 U.S. 266, 273 (2002). In determining whether an officer had a particularized objective bases for suspecting legal wrongdoing, reviewing courts must look at the totality of circumstances, allowing officers to draw on their experience and training. Id. Circumstances are to be considered "through the eyes of the officers, because they are trained to cull significance from behavior that would appear innocent to the untrained observer." U.S. v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008). See also United States v. Ortiz-Monroy, 332 F.3d 525, 529 (8th Cir. 2003) (officers may draw on their own experience and training to make inferences from and deductions about cumulative information available to them that might well elude and untrained person). Although reasonable suspicion must be more than a "hunch," the Fourth Amendment

4

only requires an officer to articulate "some minimal, objective justification for an investigatory stop." United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004).

Here, Sgt. Matherne was a law enforcement officer with 20-plus years of experience. Sgt. Matherne was conducting surveillance in a parking lot in order to address complaints by citizens and area business owners concerning suspected drug trafficking in the area. While conducting surveillance, Sgt. Matherne personally observed what he reasonably believed, based on his experience, to be a drug transaction. Sgt. Matherne observed cash being exchanged between Roark and another person, as well as hand exchange motions that Sgt. Matherne recognized as consistent with hand to hand exchange of drugs. These actions and the other surrounding circumstances and actions as set forth above, led Sgt. Matherne to believe that Roark, who was the driver of the black Jeep SUV had just conducted a drug transaction. United States v. Coleman, 603 F.3d 496, 500 (8th Cir. 2010) ("Even if an officer cannot see an actual drug exchange, the totality of circumstances may still give reasonable suspicions of criminal activity."). The Court finds these facts show that Sgt. Matherne had reasonable suspicion to believe that Roark had just engaged in a drug transaction. See United States v. Williams, 139 F.3d 628, 630 (8th Cir. 1998) (acts consistent with drug trafficking by a suspected drug dealer in area known for drug activity created reasonable suspicion to justify a stop). This reasonable suspicion clearly supported the stop of Roark's vehicle by Officers Phillips and Hagemeyer. See United States v. Morales, 238F.3d 952, (8th Cir. 2000) (Probable cause/reasonable suspicion may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on the information within the knowledge of the officer on the scene if there is some degree of communication).

Additionally, Officers Phillips and Hagemeyer also had probable cause to stop Roark's vehicle for the expired license plate on the black Jeep SUV he was driving. Officer Phillips specifically testified that he ran the black Jeep SUV's license plate on the police patrol car's computer and the return information indicated the license plate on the black Jeep SUV was expired. "Any traffic violation, however minor, provides probable cause to support a traffic stop." United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009). Roark's argument that the Jeep was a rental car and that the plate had a sticker on it indicating it was not expired is irrelevant because the police computer indicated the plate was expired and the officers were not able to

ascertain that the driver of the vehicle was renting the black Jeep SUV, as the vehicle's driver refused to stop the vehicle.

When Roark failed to stop the black Jeep despite the presence of a marked patrol car behind him with its emergency lights on, this furthered the reasonable suspicion of the officers that Roark was involved in illegal drug activity. After Roark did not stop his vehicle despite a marked police car behind him with its emergency lights activated, and ran his vehicle in to a concrete wall and exited his vehicle, running on foot away from police, officers clearly had probable cause to believe that Roark had committed a crime. See United States v. Parish, 606 F.3d 480, 486 (2010) ("Probable cause to make a warrantless arrest exits when considering all circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime."). When Officer Hagemeyer observed Roark running from police and pulling from his waistband what appeared to be a gun, the probable cause the officers had to arrest Roark was further strengthened. See United States v. Dembry, 535 F.3d 798, 800-01 (8th Cir. 2008) (where officers observed the defendant running away from them in an area known for criminal activity and attempt to dispose of a gun, it was reasonable for the officers to believe he was committing a crime, and thus, there was probable cause to arrest and search him).

Thus, when the officers finally caught up with Roark and arrested him, his arrest was supported by probable cause. Probable cause also supported the search for the gun that Roark was seen withdrawing from his waistband and the large sums of cash located on Roark's person.

**Conclusion**

For the reasons set forth above, the Court finds the officers had reasonable suspicion to stop Roark's vehicle and this reasonable suspicion escalated to probable cause warranting stopping Roark's' vehicle and arresting Roark. There is no basis for suppressing the gun officers located or any evidence found as a result of the facts set forth above. Roark's Fourth Amendment rights were not violated.

Accordingly,

IT IS RECOMMENDED that Charles Allen Roark's motion to suppress evidence be denied. [13].

Counsel are reminded they have fourteen days from the date of receipt of a copy of this

Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 31st day of May, 2016, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge